SARAH A. D. HESS

. *v.* .

JAMES KENNEY and JOHN F. MORRIS.

[Decided May 10th, 1905.]

1. Where a deed conveyed to complainant a lot fronting on a highway, it included all land in front of the lot to the centre of the street, in the absence of a reservation to the contrary, though the description did not in precise terms include any part of the street.

2. Where, at the time of a conveyance of a house and lot to complainant, there was a drain leading therefrom on to an adjoining lot, owned by complainant's grantor, which passed from thence into the street in front of complainant's property before connecting with the public sewer, the conveyance to complainant carried with it as an appurtenant the right to maintain the drain as it then existed in such adjoining lot.

3. Where complainant owned the right to maintain a tile drain through defendants' property and thence across complainant's property and into the street sewer, complainant was entitled to an injunction to restrain defendant from connecting his drain therewith in such a manner as to create an obstruction in the pipe and prevent the sewage from complainant's premises from being carried off freely.

On final hearing on bill, answer and cross-bill.

*Mr. John I. Weller,* for the complainant.

*Mr. Frederick N. Eberhard,* for the defendants.

PITNEY, V. C.

The complainant, Mrs. Hess, is the owner of a house and lot, twenty-five feet front by one hundred feet deep, on the southeasterly side, or, as treated throughout the evidence, the easterly side, of Palisade avenue, in the town of Union, in Hudson county.

It was conveyed to her and her husband by Frederick C. Hansen, by deed dated June 12th, 1895, and by the death of

her husband the title has become vested in her. It has been occupied by her ever since the conveyance.

The description of the deed, by its precise terms, does not include any part of Palisade avenue, but by the well-settled rule of law in this state it includes all the land in front of it to the centre of the street, unless there is something in the deed itself to show a contrary intention, and I find nothing in this deed to prevent the application of that rule.

At the time of its purchase there was on it a small dwelling-house, the northerly side of which was situate about twelve inches south of the northerly line of the lot.

It contained, in the basement, an ordinary sink and stationary wash-tubs, and, on the upper floors, a bath-tub and stationary wash-basins, from all of which the water was discharged into the end of a six-inch tile pipe, which passed through the north wall of the foundation of the house about twelve feet from its front, which was about ten feet from the street line and about eighteen feet from the curb line.

That six-inch tile pipe, after passing through the foundation of the house, turned abruptly toward the street, but passed on to the adjoining land of Mr. Hansen, complainant's grantor, and continued on his land, on a course nearly parallel with the northerly line of complainant's lot, until it passed the curb line, when it turned to the left and crossed the northerly line of her lot projected, diagonally, and emptied into the public sewer, in the middle of Palisade avenue, about three feet southerly from the point where her northerly line projected reached the centre of the street.

The result is, as shown by a map produced by complainant, as well as by one produced by defendant, that the six-inch sewer connection or conduit from complainant's house, when she purchased it, was located at its commencement on complainant's land, passed immediately on to Mr. Hansen's lot adjoining on the north, continued on that for a distance of about thirty-five feet, then passed on to the complainant's land, and continued thereon for a distance of about seven feet, until it reached the public sewer.

Complainant's lot was numbered 128 on a dedicatory plot of

land. The lot next north of it was numbered 129 and was owned by complainant's grantor, Mr. Hansen.

No mention is made in complainant's deed of this drain or sewer connection, but the conveyance contains the usual clause— "ways, waters, profits, privileges and advantages, with the appurtenances," &c.

Lot 129 is vacant; but at the date of the conveyance to the complainant there was standing upon it a small one-story office building, twelve feet front and about fifteen feet deep, close to the street and on the northerly side of the lot, so that it was about twelve feet distant from complainant's house.

The deed contains no reservations on the part of the grantor, Hansen. At some time, whether prior or subsequent to complainant's conveyance does not appear, the defendants, Kenney and Morris, became the owners of lot 130, facing on Palisade avenue, being the lot next but one to complainant's on the north, upon which is and has for several years been erected a two-family dwelling-house. This house at one time had a sewage connection with the public sewer in Columbia street, which crosses Palisade avenue at right angles twenty-five feet north of lot No. 130, owned by defendants.

This sewer connection became unserviceable, and the defendants, with a view of making a connection with what may be properly termed complainant's sewer conduit, purchased of Mr. Hansen lot 129, from which the small office building had been removed.

Defendants then proceeded to lay a four-inch tile drain from their house on lot 130 across lot 129, and connected the same with the complainant's sewer at the point where it left complainant's house.

This fact was disputed at the hearing, and it was asserted by the defendants, and evidence was adduced to support that assertion, that a connection had been previously made by Mr. Hansen from the rear of the small office building to the complainant's sewer at the point just mentioned, but the counter-evidence of the complainant clearly disproved this assertion, and the very map produced by the defendants showed a sewer pipe running directly from their building diagonally across the inter-

vening lot to complainant's sewer, and so located as to disprove the notion that it ever was used in connection with the small office building before referred to.

(At the hearing, I gave my reasons orally for finding this question of fact in favor of the complainant.)

Complainant then called in her sons, grown men, and they, or one of them, with the assistance of workmen, working from the inside, dug a hole through the foundation of her house, disconnected defendants' pipe, which was of four-inch diameter, from her pipe, effectually stopped the end of it, repaired the hole which defendants had made in her pipe and replaced the mason work of her foundation which had been removed.

Defendants then made a second aperture in complainant's pipe a few feet farther towards the street from the first aperture, and entirely on their own land, and inserted the end of their pipe therein. Complainant thereon promptly filed her bill for relief, setting up the facts and praying an injunction against the defendants continuing the connection they have made, and continuing to drain sewage from their house into the complainant's sewer.

One other matter of fact should be stated. Complainant alleges, and the weight of the evidence sustains her allegation, that since these disturbances of her sewer conduit the water from her appliances does not run off so freely as it did before. This result I attribute, not to an overworking of the sewer, which, in my judgment, is ample in size, if it has proper declivity, to carry the sewage from many houses, but to the circumstance that the connection was improperly made by making an aperture in the side of the pipe and inserting the end of the connecting pipe, thereby creating an obstruction. The connection should have been made by inserting in the main line a Y branch piece, which produces no obstruction.

The question presented by these facts is, to what remedy, if any, is the complainant entitled.

There can be no doubt, under the authorities (several of which are collected in *Toothe* v. *Bryce,* 50 *N. J. Eq.* (*5 Dick.*) *589,* and especially *Nicholas* v. *Chamberlain, Cro. Jac. 121* (*1606*), and *Pyer* v. *Carter, 1 Hurlst. & N. 916* (*1857*) ; *Thayer* v. *Payne,*

*2 Cush. 327*), that the conveyance by Hansen, who was then the owner of lot 129, to complainant of her lot, carried with it, as an appurtenant, the right to use the. tile drain in question for the conveyance of sewage from her house to the main sewer in the centre of the street.

The question argued at the hearing was whether that use was exclusive.

Complainant's counsel contended, upon the authority of two cases in this court (*Brakely* v. *Sharp, 9 N. J. Eq. (1 Stock.)* 9, and the same case, *10 N. J. Eq. (2 Stock.) 206; Seymour* v. *Lewis, 13 N. J. Eq. (2 Beas.) 439*), and other such cases, that it was exclusive. But I am unable to adopt that view.

I was and am of the opinion that if the sewer, as it existed at the time the conveyance was made by Hansen to the complainant, had continued on the land of Hansen all the way to the main sewer, the complainant would have had no right to complain if Hansen, or his grantee of the land on the north, had connected with that sewer drain for the use of those lands, so long as such use did not overwork it to such an extent as to diminish materially its beneficial use by complainant.

But counsel for complainant points out another fact which cannot be disposed of so readily, and that is that the conduit in question passes for several feet, before reaching the public sewer, over the land conveyed to her by the said Hansen, and that to permit the defendants to use it would be to permit Hansen to derogate from his own grant, and amount to establishing in the defendants' favor an easement on complainant's land which was not reserved, either directly or by implication, in the conveyance to her by Hansen.

Now, in determining this question, we must bear in mind that I have found, as a matter of fact, that neither at that time or later had Hansen ever made any connection with this sewer drain for purposes connected with either of the lots lying to the north.

There was at the time of the conveyance no apparent easement exercised by him as owner of lot 129 over lot 128.

Undoubtedly the drain was originally laid near the line be-

tween the two lots with a view of using it for both, but such use had never been put in practical operation in behalf of lot 129.

I say there was no apparent easement in use by Hansen because there was nothing on the ground visible to the eye to indicate that any use was being made by Hansen of this pipe for the lot lying to the north of the lot conveyed to the complainant, and in fact, as we have seen, no such use was being made.

On the other hand, the use being made by the occupants of complainant's house was apparent in the proper sense of that word. The water flowing from the domestic appliances actually escaped and flowed into the end of the drain. Just where it went from that point was not apparent. But it was not necessary, in order to make up the element of "apparency," that the further and ultimate course of the escaping sewage should be visible. It was enough that it actually escaped. And as the complainant was aware that her house stood one foot away from the line, she might reasonably assume that the conduit was wholly on her land.

Further, it must be presumed that the actual location of the conduit was known to Hansen. He was chargeable with knowledge that it passed on to his land and recrossed to the land conveyed by him to complainant before reaching the public sewer.

It is probable that Hansen was ignorant of the rule of law that declared that the title to the middle of the street passed by his deed to complainant, and supposed that the location of the conduit, after it reached the street, was a matter of no consequence. But this supposed ignorance does not excuse him. He should have reserved the right to use the conduit where it crossed complainant's land in the street.

But the question still remains, did a reservation of a right appurtenant to lot 129 to use the conduit, as laid across complainant's land, result by implication, there being nothing to indicate to the eye that it existed.

This question was discussed by me in *Toothe* v. *Bryce, supra,* and I came to the conclusion that, according to the later and best English authorities, which were founded in reason, such a right could not be reserved by mere implication, except in a case of actual necessity as distinguished from mere convenience, in the

face of the language found in this deed, which conveyed "all the right, title and interest of the party of the first part in and to" the land conveyed.

The reasoning of Lord Westbury, in *Suffield* v. *Brown, 4 De G. J. & S. 185; 33 L. J. Ch. 249; 10 Jur. (N. S.) 111,* seems to me unanswerable, and was adopted in the later English cases.

But I also found that by the clear weight of authority in this court and in this state the other rule laid down by Mr. Gale prevails, and that a right to the continuance of an apparent *quasi*-easement would be reserved by implication wherever it would pass by a conveyance as an appurtenant. And it is proper to add that one of the cases cited by me in *Toothe* v. *Bryce,* namely, *Kelly* v. *Dunning, 43 N. J. Eq. (16 Stew.) 62,* was afterwards affirmed by the court of errors and appeals (*46 N. J. Eq. (1 Dick.) 605*), and I was later informed by counsel that I was mistaken in supposing it was a case of implied grant, and that it was in fact a case of implied reservation.

However, the abstract question is of no importance here, since the *quasi* use was not apparent. But the question remains, is this right of complainant of such a character as to warrant the interference of this court by its strong arm of injunction. I mean the exclusive right of the complainant to the use of the drain or conduit, where it crosses the corner of her land near the centre of the street.

It is apparent that the use by the defendants of that part of the conduit will inflict no present pecuniary injury on complainant. Her title to the land in the street is so smothered by the paramount right of the public as to be of little or no value, except in the highly improbable event of the vacation of the street. In fact, the only conceivable injury which will result from refusing an injunction is that defendants may acquire a right by long user.

On the other hand, the result of an injunction will be simply to compel the defendants to lay down less than ten feet of new tile on their own land in the middle of the street, a very slight matter, so that the interests on either side are of little importance.

But I deem it unnecessary to decide this question at this stage of the cause.

Complainant is clearly entitled to a certain measure of relief on the other part of the case. She is entitled to an injunction, unless defendants can satisfy me—which they have not done so far—that their use of the conduit will work complainant no practical injury.

I am clearly of the opinion that they must make a proper connection, namely, by a Y joint, with the six-inch conduit, and then I must be satisfied by evidence that the fall in the conduit between complainant's house and the public sewer is so great and the condition of the conduit is such that complainant's sewage will at all times flow off freely.

It is easy to ascertain the declivity of the conduit by taking a level with a proper engineer's instrument from complainant's house to its outlet in the public sewer, which is accessible through a manhole. The Y joint is easily made and the capacity of the conduit is easily tested. If the parties cannot agree upon the details of these measures, I will refer the matter to a master.